## PAPE ET AL. *v.* HARTWIG.

[No. 2,888.   Filed November 23, 1899.]

BILLS AND NOTES.—*Action by Indorsee.—Consideration.—Evidence.*— Where in an action on a promissory note by an indorsee a defense was interposed that the note was given for a patent right, evidence as to plaintiff's custom of loaning money and purchasing notes was properly excluded.  *pp. 336, 337.*

PRACTICE.—*Cross-Examination.—Offer to Prove.—Harmless Error.* —A cause will not be reversed on account of the action of the court in permitting counsel to make an offer, in the presence and hearing of the jury, to prove the facts as detailed in a question propounded to a witness on cross-examination, to which an objection had been sustained, where the court informed the jury not to consider any facts stated in the offer to prove, and it appears from the record that a correct conclusion was reached by the jury.  *pp. 337-339.*

EVIDENCE.—*Bills and Notes.*—Where in an action on a promissory note the question was raised as to plaintiff's knowledge at the time of the

purchase of the note that it was given for a patent right, no error was committed in permitting plaintiff to relate a conversation had with the payee of the note after he had purchased it, in which he was first informed that it was given for a patent right.  *p. 339.*

MISCONDUCT OF COUNSEL.—*Comment on Interrogatories to Jury.*—A statement made by counsel in his closing argument to the jury, that "this interrogatory is a trap, fixed for you, and you should not be caught by it," was a legitimate argument, since such language could only have been understood by the jury as meaning that the question was misleading, or was subject to two meanings.  *pp. 339, 340.*

APPEAL AND ERROR —*Joint Assignment of Error.*—*Instructions.*—A joint assignment in a motion for a new trial that the court erred in giving a series of instructions is not available on appeal unless all of the instructions in the series are bad.  *p. 340.*

INSTRUCTIONS.—*Bills and Notes.*—Where the words "given for a patent right" were omitted from a promissory note, the action of the court in misquoting the statute as to whose duty it was to insert such words in a note given for a patent right, in an instruction in the trial of an action on the note by a purchaser thereof, was harmless error, since the motives of the seller or maker of commercial paper have no place in determining the rights of the buyer.  *p. 340.*

BILLS AND NOTES.—*Commercial Paper.*—*Note Given for Patent Right.*—*Bona Fide Purchaser.*—*Notice.*—Where a note is offered for sale which is in form commercial paper, and is without any infirmity appearing upon its face, the purchaser is not put upon inquiry as to any equities existing between the original parties to the note.  *p. 341.*

SAME.—*Commercial Paper.*—*Note Given for Patent Right.*—*Failure of Maker to Insert " Given for Patent Right."*—The maker of a note given for a patent right who fails to place or cause to be placed in the note the words which destroy its negotiability is guilty of negligence, and he cannot defend against it in the hands of a *bona fide* holder for value before maturity and without notice.  *p. 341.*

From the Allen Superior Court.   *Affirmed.*

*W. Leonard* and *E. Leonard,* for appellants.

*W. P. Breen* and *John Morris, Jr.,* for appellee.

HENLEY, J.—Appellee, who was the plaintiff below, commenced this action against appellants on two promissory notes which had been purchased by him of one Clayton L. Stoner, the payee named in both of said notes.   The notes were in form negotiable by the·law merchant.   The appel-

lants Hunter and Becker jointly answered in two paragraphs. The appellant Pape separately answered in two paragraphs. The first paragraph of each answer was a general denial. The second paragraph alleged in substance that these notes were given for a patent right; that the words "given for a patent right" were not written in the body of the notes or either of them; that appellee purchased said notes with full knowledge of all said facts. Appellee replied first the general denial; second, that he purchased the notes in suit in good faith, before their maturity, for a valuable consideration and without knowledge that the notes had been given for a patent right. This reply was addressed to the joint answer of appellants Hunter and Becker. At the same time appellee filed a reply in three paragraphs to appellant Pape's separate answer, the first paragraph of which reply is a general denial, the third being in substance the same as that addressed to the answer of Hunter and Becker, while the second paragraph alleged that there was an agreement between appellant Pape and Stoner, the payee of the notes, that the words "given for a patent right" should not be inserted in the face of the notes, so that the said Stoner might the more easily negotiate them; that appellee had no notice or knowledge of said agreement at the time he purchased said notes, and had no notice or knowledge at the time he purchased said notes that said notes were given for a patent right. There was a trial by jury, and verdict and judgment for appellee for the principal and interest of said notes, costs and attorneys fees.

There is no question raised in this court as to the sufficiency of any of the pleadings. Counsel for appellants say: "The only error relied upon, and to which we desire to call the attention of this court, is the overruling of the motion for a new trial." It is also conceded by appellants' counsel, that, if appellee purchased the notes in suit without notice that they were given for a patent right, he would be entitled to enforce them against appellants. Such is the rule laid

down in numerous cases by our Supreme Court. *New* v. *Walker*, 108 Ind. 365; *Sondheim* v. *Gilbert*, 117 Ind. 71, 5 L. R. A. 432; *Tescher* v. *Merea*, 118 Ind. 586.

The motion for a new trial embraces twenty-seven reasons which we will dispose of in the order in which they are discussed in appellants' brief. Reasons three, four, five, and six relate to the action of the court in refusing to permit appellee while a witness in his own behalf upon cross-examination to answer the following questions, viz.: (3) "Can you give the jury any idea how much money you have loaned, and how many notes you have purchased during the time you have been in business? (4) Have you purchased any notes and mortgages other than the ones in suit? (5) Was it your custom to buy the notes that you purchased without asking any questions as to what the consideration was, or what they were given for? (6) Is it your custom to purchase notes of strangers without asking why the note was given or making some inquiry as to whether or not the note was all right?"

The facts which impeached the validity of the note were specially pleaded by appellants in their answers, and upon the issue thus raised the appellants had the burden of proof. The burden of proving the averments of the reply was upon appellee. *Cronkheit* v. *Nebeker*, 81 Ind. 319, 42 Am. Rep. 127. In the case at bar the only facts averred in appellants' answers, the proof of all of which would have removed appellee from the position of a *bona fide* holder, were: (1) That the notes were given for a patent right; (2) that the words "given for a patent right" were not written in the body of the notes; (3) that appellee knew at the time he purchased the notes that they had been given for a patent right. We are unable to see how the legitimate answers to either of these questions would have tended to prove any of the material allegations of appellants' answers, nor could they have tended to disprove the averments of appellee's reply. It would hardly be contended that the answers to these

questions would show that the notes were given for a patent right, or that the answers would show that the words "given for a patent right" were not in the notes. Then if competent for any purpose it must have been to show notice upon the part of appellee of some infirmity existing in the notes, and the only infirmity alleged is the failure to insert the words, "given for a patent right."

The answers may have tended to prove a general negligence or lack of diligence upon the part of appellee in the transaction of his business, but notice or knowledge of facts which might affect the validity of commercial paper as between the original parties to it does not, and cannot, depend upon the negligence or diligence of the purchaser. *Collins* v. *Gilbert*, 94 U. S. 753; *Tescher* v. *Merea*, 118 Ind. 586.

What was done by appellee in certain other particular cases, or what he generally did as to using diligence in investigating the integrity of the paper he purchased, or the number of notes and accounts he had purchased prior to the purchase of the notes in suit, would certainly not be proper evidence to show notice of some infirmity in this particular instance. If such evidence is permitted to go to the jury with the sanction of the trial court, with the understanding that it may or can be used by them to affect or determine the validity of commercial paper, then the use of such form of promissory note or bill of exchange had as well be abandoned, as its value to the merchant and banker and the commercial world would end.

Reasons fifteen, sixteen, seventeen, twenty, and twenty-one of the motion for a new trial present the question as to whether the trial court erred in permitting counsel for appellee while cross-examining one of appellants, after an objection to a question addressed to the witness had been sustained, to make an offer in the presence and hearing of the jury, over appellants' objection, to prove the facts as detailed in the question. Appellants' counsel objected to any offer to prove

being made, on cross-examination, in the presence of the jury, as tending to bias and prejudice the jury. The court overruled the objection. Counsel for appellee made the offer to prove, and counsel for appellant moved the court to instruct the jury not to consider any facts mentioned by counsel in the offer. This motion was overruled, the court saying in the presence and hearing of the jury: "Motion overruled. The jury are supposed to be honest men and do their duty as citizens and as jurors, and I think understand without instruction that offers are not evidence, and should not be considered as such; they are supposed to be doing impartial justice under the law, without being instructed specially at every offer that is made."

The offers to prove should not have been permitted. The only question is whether such action in this case amounts to reversible error. It is well settled in this State, that in order to save the exception and present any question upon cross-examination to which an objection has been sustained, an offer to prove is not necessary. The question is properly saved when at the proper time an exception to the ruling of the court is reserved. *Hyland* v. *Milner*, 99 Ind. 308; *Wood* v. *State*, 92 Ind. 269; *Harness* v. *State, ex rel.*, 57 Ind. 1.

In the case of *Randall* v. *State*, 132 Ind. 539, the Supreme Court passed upon this question, and in speaking of the offer to prove made by the prosecuting attorney said: "The action of the prosecutor was improper and should have met with a prompt rebuke from the court. While the course pursued by him is not uncommon, it should never be tolerated. It is an indirect method of reaching and influencing improperly the minds of jurors by a suggestion of the existence of facts prejudicial to the defendant, which the court has by its ruling already adjudged to be incompetent and improper." We cannot say, in view of the fact that the court informed the jury not to consider any facts stated in the offers to prove, and for the further reason that it appears

from the record that the jury arrived at a correct conclusion and that substantial justice had been done the parties, that the error in this case was sufficient to justify a reversal of the judgment.

The next question argued by appellants' counsel arises under reasons eighteen and nineteen of the motion for a new trial. Appellee while testifying in his own behalf was asked the question as to when it was that he was first informed that the notes in suit were given for a patent right and how it happened that he received such information. Appellee answered that he was first informed by Mr. Pape that the notes were given for a patent right and that the information was acquired about one week after the notes were purchased. Appellee was then asked to relate the conversation had at that time with appellant Pape. An objection was interposed by appellants to this question. The court sustained the objection as to appellants Hunter and Becker, and overruled it as to Pape. We think the ruling of the court was right. The answer to the question objected to was simply the repetition of the conversation with Pape by which appellee acquired the information mentioned in the preceding question and answer. The proper way to convey to the court or jury trying a cause facts acquired in conversation, if such facts are competent to be proved, is to detail the conversation itself.

Reasons twenty-two and twenty-three of the motion for a new trial relate to the alleged misconduct of appellee's counsel during the closing argument to the jury. Mr. Breen one of the attorneys for appellee in his closing argument to the jury in referring to one of the interrogatories submitted to the jury by appellants said: "Gentlemen of the jury, this interrogatory is a trap fixed for you, and you should not be caught by it." It seems to us that this was legitimate argument. It was manifestly the intent of the speaker to tell the jury by the use of the above words, that a certain question was misleading, or was subject to two meanings, or might

be construed with reference to more than one fact or circumstance.    The speaker may. not have selected the best words to convey his meaning to the jury, but the words used when applied to an interrogatory could have been understood by the jury only in the way here indicated.

The last question discussed by counsel arises under reasons twenty-four, twenty-five, twenty-six, and twenty-seven of the motion for a new trial, and relates to the giving and refusal to give certain instructions to the jury.    The error, if any, attempted to be presented by the twenty-seventh reason for a new trial is not available, because the assignment is joint. It reads as follows:  "The court erred in giving to the jury trying said cause instructions numbered one, two, three, four, five, and six on its own motion."    Counsel for appellants do not contend that all of said instructions are bad.    It is contended by counsel that the court in instructing the jury misquoted the statute as to whose duty it was to insert the words "given for a patent right" in a note. given for such purpose.    It may be conceded that the lower court did misquote the statute in this regard, but this was a harmless error.    It was immaterial in this case whose duty it was to write these words in the notes.    The whole question presented by the pleadings was, did the purchaser have notice of the defenses existing between the original parties to the note at the time he purchased them.    The good faith of the buyer is determined by the evidence introduced upon the question· of notice.    If he had no notice of the infirmities of the paper then he is necessarily a *bona fide* purchaser.    The notice is either actual notice, or such a combination of circumstances as will create a distinct legal presumption that the purchaser must have known of the defenses to the paper. The motives of the seller or of the makers of commercial paper have no place in determining the rights of the buyer. The question is as to the good faith of the buyer.    *Helmer* v. *Krolick*, 36 Mich. 371; *Church* v. *Clapp*, 47 Mich. 257, 10 N. W. 362.

In the case of *Tescher* v. *Merea*, 118 Ind. 586, it is said:

Pape *v.* Hartwig.

"It is undoubtedly true that the conclusion may be deduced that a purchaser had notice when there is such a combination of circumstances shown as to create a distinct legal presumption that he was acting collusively, and in bad faith, and that he must have known the facts without inquiring. * * * The ultimate fact to be found is not whether the indorsee might have ascertained or could have known that the note was fraudulently obtained, but whether he in fact knew it, or acted in bad faith in abstaining from inquiry. As has been said, it is a question, not of negligence or diligence, but one of honesty and good faith. *Carroll* v. *Hayward*, 124 Mass. 120; *Kellogg* v. *Curtis*, 69 Me. 212." See, also, *Hankey* v. *Downey*, 3 Ind. App. 325.

Where a note which is by its form commercial paper, and is, without any infirmity appearing upon its face, offered for sale, the purchaser is not put upon inquiry as to any equities existing between the original parties to the note. It is also the law in this State that where a person negligently signs a note negotiable by the law merchant, fair upon its face, and complete in all its parts, he puts in circulation an instrument which he must know is a subject of barter and sale in the commercial world, and to which certain rights and liabilities are guaranteed by law to the parties thereto, and he cannot defend against it in the hands of a *bona fide* purchaser. *Baldwin* v. *Barrows*, 86 Ind. 351; *Fisher* v. *Von Behren*, 70 Ind. 19; *Woollen* v. *Ulrich*, 64 Ind. 120.

The maker of a note given for a patent right who fails to place or cause to be placed in the note the words which destroy its negotiability and warn prospective purchasers of the equities existing between the original parties to the instrument is guilty of negligence, and he cannot defend against it in the hands of a *bona fide* holder for value, before maturity and without notice. *Tescher* v. *Merea, supra.*

The statement by the lower court of the law applicable to the issues and evidence in this cause in the instructions to the

jury was in all respects in accord with the rules of law herein laid down. We find no available error. Judgment affirmed.